UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TARRELL RISTER, :
:
    Plaintiff : No. 3:CV-11-1733
:
vs. :
: (Judge Nealon)
TED W. WILLIAMS, et al., :
:
    Defendants :

**MEMORANDUM**

FILED
SCRANTON

FEB 27 2014

PER_____
DEPUTY CLERK

**BACKGROUND**

Tarrell Rister, an inmate confined in the Mahanoy State Correctional Institution, Frackville ("SCI-Mahanoy"), Pennsylvania, filed the above-captioned civil rights complaint pursuant to 42 U.S.C. § 1983. The named Defendants are six (6) employees of the SCI-Rockview, Plaintiff's former place of confinement. Rister alleges that Defendants were deliberately indifferent to his alleged serious medical need pertaining to dental care. (Doc. 1).

Presently pending is Defendants' motion to dismiss or, in the alternative, for summary judgment, in which Defendants argue that Rister has failed to exhaust available administrative remedies. (Doc. 16). For the reasons outlined below, Defendants' motion for summary judgment will be granted.

**Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment ". . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court

must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477

U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**Statement of Facts**

From the pleadings, declarations, and exhibits submitted therewith, the following facts can be ascertained as undisputed.

Rister claims that "between the month April and May of 2010, Plaintiff received dental treatment by [either] Dr. Tejeda or Dr. Italia", who extracted a right upper tooth in a long and painful procedure. (Doc. 1, complaint at ¶ 11). At that time, the doctor allegedly noticed that Rister had a left bottom tooth that was broken and stated he would schedule another appointment for Rister to have it filled. Id. at ¶ 12.

Rister further alleges that he "was taken to dental for an emergency" between July and August of 2010 because his gums "were swollen and bleeding". Id. at ¶ 13. He avers that at that time, the doctor noticed that his left bottom tooth had a "bigger hole" and told Rister that he had him scheduled for a filling in a few weeks. Id. at ¶¶ 13-14.

On October 11, 2010, Rister began to feel sharp pains "as a result of the air and drinking cold water" and that the pain became worse in November and began to affect him "more daily." Id. at ¶ 15. He alleges that he sent four (4) sick call slips

during the period from November 2010 through February 2011 and that they were ignored. Id. at ¶¶ 15-16.

On March 21, 2011, Rister claims that the pain increased to the extent that he was unable to eat his full meal, sleep, and think properly. Id. at ¶ 17. He states that he noticed he had an infection due to swelling of his gums and "green stuff and blood coming outta [sic] his gums" in the area of the broken tooth. Id. at ¶ 18. Rister sent a sick call slip to dental the next morning, but claims that it was ignored. Id. at ¶¶ 18-19.

On April 17, 2011, Rister filed an Inmate Request to Staff, directed to Defendant Marsh, asking Marsh to "enforce dental staff to call me up to their office for treatment." (Doc. 29, Ex. N, Inmate's Request to Staff Member). Both Marsh and Williams responded to the request on April 20, 2011 by saying, "You are scheduled." Id.

On May 10, 2011, Rister filed Grievance No. 365628, requesting "immediate outside treatment and compensatory damages" for "denying [him] access to medical care against Dentist J. Italia, Dentist John Doe who intentionally denied or is delaying me access to medical care." (Doc. 29, Ex. A, Official Inmate Grievance No. 365628).

On May 12, 2011, Rister was "taken to dental for treatment," and "upon examination the Defendant Tejeda noticed that Rister broken tooth have grown a cavity that were not there before that have traveled to the tooth next to it." (Doc. 1, complaint at ¶¶ 23, 24). Rister claims that due to the delay in treatment he suffered pain, lack of concentration, sleep deprivation, and decreased ability to eat. Id. at ¶¶ 25, 28, 29.

On June 10, 2011, Rister's Grievance No. 365628 was denied by the Grievance Coordinator Rackovan as follows:

> In response to your grievance submitted on 5/10/11, it was confirmed that you received dental treatment on 5/12/11 by Dr. Tejeda. Previous appointments on 9/30/10 and 3/1/11 were scheduled but you were not seen due to RHU/AC status. Inmates in DC and AC status are seen when possible, but typically only for emergent conditions. No violation of policy occurred; nor were you treated differently than other inmates in DC and AC status.
>
> Your grievance is denied.

(Doc. 17, Ex. 3, Initial Review Response).

On June 14, 2011, Rister submitted an appeal of the denial of Grievance No. 365628 to the Superintendent Lamas. (Doc. 17, Ex. 3, Appeal).

On July 6, 2011, Rister submitted an Inmate's Request to Staff Member to Grievance Coordinator Rackovan, inquiring as to Grievance Appeals filed in

Grievance Nos. 363138, 365628, and 366334. (Doc. 29, Ex. Ex. E).

On July 12, 2011, Grievance Coordinator Rackovan responded that Grievance No. 366334 was answered by the Superintendent on July 7, 2011 and Grievance Nos. 363138 and 365628 were answered on July 12, 2011. Id.

On July 14, 2011, Rister's appeal was denied as follows:

> Simply because you alleged you were in pain does not require dental to immediately call you to the Dental Department to be examined. Dr. Tejeda assessed you based on your request and your dental history and provided necessary treatment on May 12, 2011.

(Doc. 17, Ex. 3, Facility Manager's Appeal Response).

On July 17, 2011, Rister filed Grievance No. 373425 against Grievance Coordinator Rackovan and Superintendent Lamas for not responding to his appeals in Grievance Nos. 363138, 365628, and 366334. (Doc. 29, Ex. I, Grievance No. 373425).

On July 19, 2011, Plaintiff's grievance was rejected as follows:

> You may not grieve your allegation that appeals were not answered. You may appeal to Final Review and allow them to address your allegations. Further, these 3 appeals were answered and sent to you on July 7th and July 12th. You have been in our RHU for months and there is no evidence you did not receive the responses. If you wish additional copies, submit a cash slip for 30¢.

(Doc. 29, Ex. I, Grievance Rejection Form).

On July 24, 2011, Rister filed a "rejection appeal" to Superintendent Lamas, challenging Grievance Coordinator Rackovan's July 19, 2011 rejection of Grievance No. 373425. (Doc. 29, Ex. I, Rejection Appeal). Also, on this same date, Rister submitted an Inmate's Request to Staff Member to Superintendent Lamas, inquiring as to why she had not responded to his appeals in Grievance Nos. 363138, 365628, and 366334. (Doc. 29, Ex. J, Inmate's Request to Staff Member).

On July 28, 2011, Grievance Coordinator Rackovan responded that "these appeals were all answered" on July 14, 2011. Id. On August 9, 2011, Superintendent Lamas responded with the following:

> These three grievances were answered and copies of the answers were sent to you in RHU. You have been housed in RHU for months and should have received the copies. Mr. Rackovan correctly stated you may request additional copies of the responses at the prevailing copy rate. Accordingly, the issue of this particular grievance has been addressed.
>
> Your appeal is denied.

(Doc. 29, Ex. I, Facility Manager's Appeal Response).

On August 14, 2011, Rister filed a final appeal of the rejection of Grievance No. 373425. (Doc. 29, Ex. I, Appeal).

On September 2, 2011, Plaintiff's final appeal was dismissed for Plaintiff's failure to "provide this Office with required documentation for proper review."

(Doc. 29, Ex. I, Final Appeal Decision).

On September 16, 2011, Rister filed the instant action in which he seeks compensatory and punitive damages for Defendants' "deliberate indifference by failing to ensure that Rister received the needed dental treatments, despite defendants' knowledge of Rister's serious dental need." (Doc. 1, complaint).

**II     Discussion**

Defendants contend that Rister's complaint should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532

(2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 92. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Pennsylvania Department of Corrections (DOC). The DOC has a three-level administrative remedy review process designed to address inmate problems that may arise during the course of confinement. See 37 Pa. Code § 93.9(a). After an attempt to resolve any problems informally, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review. Id. An inmate must file a grievance within fifteen (15) working days of the issue being grieved. Id. Every grievance must be signed

and dated by the inmate. Id. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution. Id. The third and final level of appeal is to the Secretary of Inmate Grievances and Appeals. Id.

Actual knowledge by the defendants of a plaintiff's claim is irrelevant: a prisoner must exhaust administrative remedies by complying to the extent feasible with the prison's administrative regulations governing inmate grievances. Substantial compliance with existing remedies is sufficient. Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000). However, failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill, 372 F.3d at 222-26.

Since there is no dispute that a grievance system exists, Rister must use it before filing suit. The record in the instant action reveals that, while he started the grievance process concerning the issues raised in his complaint, he failed to finish the grievance process. In fact, in his brief in opposition, Rister states that he did appeal the grievance, however, "Superintendent Lamas failed to respond." (Doc. 29, brief in opposition).

To the extent that Rister submitted a grievance to the appropriate official and

did not receive a response, the procedure contemplates several tiers of review and the grievance review system is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his satisfaction. His next step would have been to appeal the Superintendent's decision, or lack of one, to the Secretary of Inmate Grievances. The record before the Court demonstrates no evidence of this. Thus, all competent evidence of record in this case demonstrates that Rister simply failed to properly exhaust administrative remedies. The failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill, 372 F.3d at 218, the Third Circuit Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The Court further ruled that procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)." Id. at 231-32.

In this case, the record clearly discloses that Rister failed to appeal the

responses, or lack thereof, to the final review. Thus, Rister has sustained a procedural default under the applicable DOC regulations.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Rister offers no evidence to justify his failure to appeal the lack of response by the Superintendent to his appeals.[1] Thus, Rister is now foreclosed from litigating his claims in this Court.

In Spruill, the Third Circuit Court of Appeals found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230.

---

[1] Although the record is conflicted as to whether Superintendent Lamas denied Rister's appeal on July 12, 2011 or July, 14, 2011, at the very latest, on July 19, 2011, he was notified by Grievance Coordinator Rackovan that the correct procedure to appeal the alleged nonresponse to his grievance appeals is to "appeal to Final Review and allow them to address your allegations." See (Doc. 29, Ex. I, Grievance Rejection Form). Rister failed to do so.

In Pusey v. Belanger, 2004 WL 2075472, *2-3 (D. Del. 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants.

An appropriate order will be issued.

Dated: February 27, 2014

_____
**United States District Judge**